

**NUMBER 13-07-665-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**MADHAVAN PISHARODI,**                                          **Appellant,**

**v.**

**WATTS LAW FIRM, L.L.P., WATTS &
HEARD, L.L.P., RAY R. MARCHAN; CARMEN
D. ROCCO, AND JAMES R. GOZA,**                **Appellees.**

---

On appeal from the 357th District Court
of Cameron County, Texas

---

**MEMORANDUM OPINION**

Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Vela

This is an appeal from a summary judgment granted in favor of appellees, Carmen D. Rocco, M.D., James R. Goza, Watts Law Firm, L.L.P., Watts & Heard, L.L.P., Harris & Watts, P.C., and Ray R. Marchan, and against appellant, Madhaven Pisharodi, M.D. in a case alleging abuse of process and conspiracy to commit abuse of process. We affirm.

## I. BACKGROUND

Dr. Pisharodi, is a physician in Brownsville. Appellees Watts Law Firm, L.L.P., Watts & Heard, L.L.P., Harris & Watts P.C., Ray R. Marchan, and Goza are Texas attorneys and law firms. Dr. Rocco is a physician practicing in Brownsville. Dr. Rocco and Goza were married at the time the events surrounding this matter took place.

In 2000, Dr. Pisharodi was named as a defendant in a medical malpractice lawsuit brought by the Cabello family following the death of their child, Julio Cabello. Marchan, working with the Watts law firm, was the attorney representing the Cabello family. Dr. Rocco was one of Julio Cabello's treating physicians. Dr. Pisharodi's claim in the underlying case is based primarily on a January 2001 referral fee agreement between Goza and Marchan that netted Goza a $140,000 fee for referring the Cabello case. Dr. Pisharodi asserts that Dr. Rocco "referred" the Cabello matter to Goza, her husband, for legal representation; Goza, in turn, referred the case to Marchan.

Goza first met with the Cabellos in Dr. Rocco's office after Julio's death, at Dr. Rocco's request. The family had legal questions that Dr. Rocco could not answer. During that meeting, issues arose that Goza thought could lead to a malpractice action. Goza told the Cabellos that he could recommend several attorneys to assist them, including attorney Marchan.

2

Dr. Pisharodi claims that because Dr. Rocco was a treating physician in the underlying case, she was an important fact and expert witness. He urges that the Cabello case would have been worthless and would probably not have been filed had the defendants known early-on that Dr. Rocco's husband had received a large referral fee in the case. Dr. Pisharodi asserts that the referral fee was concealed from the defendants and him. He argues that Dr. Rocco actually received the fee because she and Goza were married at the time.

The case eventually settled. The Cabellos' case against Dr. Pisharodi was dismissed after he allegedly incurred $80,000 in attorney's fees. He then filed suit against appellees claiming abuse of process and conspiracy to abuse process. In response, appellees filed and the trial court granted their motions for summary judgment.

## II. STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life and Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). The standards of review for traditional and no-evidence summary judgments are well established. A movant for traditional summary judgment has the burden to establish that there are no material issues of fact. TEX. R. CIV. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex. 1999); *Mercier v. Sw. Bell Yellow Pages, Inc.,* 214 S.W.3d 770, 773 (Tex. App.–Corpus Christi 2007, no pet.). Evidence favorable to the non-movant will be taken as true, every reasonable inference will be indulged in the non-movant's favor, and doubts must be resolved in the non-movant's favor. *Knott,* 128 S.W.3d at 215.

In contrast, a no-evidence summary judgment is the same as a pretrial directed

3

verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581-2 (Tex. 2006); *Ortega v. City Nat'l Bank,* 97 S.W.3d 765, 772 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g). We review the evidence in the light most favorable to the non-movant. *City of Keller v. Wilson,* 168 S.W.3d 802, 825 (Tex. 2005). The non-movant must produce evidence to raise a genuine issue of material fact in order to defeat a no-evidence summary judgment. TEX. R. CIV. P. 166a(i). To determine whether the non-movant has met its burden, we review the evidence in the light most favorable to the non-movant, crediting such evidence that reasonable jurors could credit and disregarding contrary evidence unless reasonable jurors could not. *Tamez,* 206 S.W.3d at 582; *City of Keller,* 168 S.W.3d at 827.

Because appellees presented both no-evidence and traditional grounds for summary judgment, we first address appellants' challenges to the no-evidence motions. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

## III. ANALYSIS

### A. Abuse of Process

We first turn to Dr. Pisharodi's abuse of process claim. The term "process" is defined as "[a] summons or writ, esp. to appear or respond in court." BLACK'S LAW DICTIONARY 1010 (8th ed. 2005); *See Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex. Civ. App.–Corpus Christi 1978, writ ref'd n.r.e.). The elements of an abuse of process claim include (1) an illegal, improper, or perverted use of process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act. *Preston Gate, L.P. v. Bukaty*, 248 S.W.3d 892, 897

4

(Tex. App.–Dallas 2008, no pet.). In order to be an abuse, the process must have been used to accomplish an end which is beyond the purview of the process and compels a party to do collateral things that he could not be compelled to do. *Id.* The crucial aspect of this tort is the improper use of process after it has been issued. *Id.*; *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.–Houston [14th Dist.] 2000, pet. denied). In other words, the original issuance of process is justified, but the process is later used for an unintended purpose. *Id*. When the process is used for the purpose for which it was intended, even if accomplished through ulterior motive, no abuse of process has occurred. *Id.*; *Baubles & Beads v. Louis Vuitton*, *S.A*. 766 S.W.2d 377, 379 (Tex. App.–Texarkana 1989, no writ).

The "gist" of abuse of process as a tort does not involve commencing an action or causing process to issue without justification. *Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. App.–Houston [1st Dist.] 1965, no writ). Rather, it involves misusing or misapplying process justified in itself for an end other than it was intended to accomplish. *Id.* The purpose for which the process is used is the only thing of importance. *Id*. If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution. *Montemayor v. Ortiz*, 208 S.W.3d 627, 650 (Tex. App.–Corpus Christi 2006, pet. denied).

Mere procurement or issuance of process with a malicious intent or without probable cause is not actionable; there must be an improper use of the process after its issuance. *Detenbeck v. Koester*, 886 S.W2d 477, 481 (Tex. App.–Houston [1st Dist.] 1994, no writ). Where the only process issued in a case is a citation and no allegations are made with regard to any abuse in the execution of service of that process, there is no cause of action

5

for abuse of process. *Id.*

In their no-evidence motions for summary judgment, appellees claim that there was no evidence adduced of the elements required to maintain an abuse of process claim. As the rule itself recognizes, appellees had no burden to produce evidence. *City of Keller*, 168 S.W.3d at 825. Rather, the rule places the burden upon Pisharodi to produce evidence. *Ford Motor Co.*, 135 S.W.3d at 600.

As summary judgment evidence, Pisharodi submitted an affidavit executed by attorney Horacio Barrera. Barrera averred that information regarding a referral fee paid to Goza was not revealed in the case. Had the information been disclosed, the discovery process and the strategy employed by the defendants would have been altered. Dr. Pisharodi stated in his affidavit that he did not know until September 2003 that a referral fee had been paid to Goza. He claims that he spent approximately $80,000 in attorney's fees, that he committed no act of negligence, and that there was no legitimate basis for the suit that the plaintiff brought against him. Attorney Ed Stapleton also submitted an affidavit in response to the no-evidence motion for summary judgment that outlined the circumstances surrounding the referral fee to Goza. He opined that the claim against Dr. Pisharodi would have had no value if it had been known "that Carmen Rocco was a fact witness, expert witness and in a position to receive a contingent fee based on the same claim." Dr. Pisharodi also attached various discovery responses to his response that outlined the referral fee agreement, as well as excerpts from his deposition.

All of the evidence offered involved the existence of and the alleged secrecy surrounding the referral fee arrangement. There was, however, no evidence offered by Dr.

6

Pisharodi that appellees made an illegal, improper, or perverted use of the process, that there was an ulterior motive for exercising the use of process or that damages resulted from an illegal act involving the process. The only process involved here was the citation that was issued. There was no allegation or evidence that there was abuse in the execution or service of process. The mere maintenance of a civil action, even if done with malicious intent, will not support a cause of action for abuse of process. *Detenbeck*, 886 S.W.2d at 481. Accordingly, we hold that Pisharodi failed to introduce any evidence on any element of an abuse of process claim and the no-evidence motions for summary judgment were properly granted.

B. Conspiracy to Commit Abuse of Process

A civil conspiracy involves a combination of two or more persons with an unlawful purpose or a lawful purpose to be accomplished by unlawful means. *Ernst & Young v. Pacific Mut. Life Ins.* Co., 51 S.W.3d 573, 583 (Tex. 2001). Because the conspiracy itself requires intent, the underlying tort for a conspiracy must be an intentional tort. *Firestone Steel Prods. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996). The elements of conspiracy require some participation in an underlying tort; if no intentional tort was committed, there is no claim for conspiracy. *Id.*

The trial court correctly determined that appellees were entitled to summary judgment as a matter of law on their abuse of process claim. Because there was no evidence offered that the abuse of process tort had been committed by any of the appellees, the conspiracy to commit abuse of process claim also fails. Dr. Pisharodi's issue, which encompasses both the abuse of process and conspiracy to commit abuse of

7

discretion claims, is overruled.

## IV. Conclusion

We affirm the judgment of the trial court.

ROSE VELA
Justice

Memorandum Opinion delivered and
filed this 14th day of August, 2008.